1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10         **EASTERN DIVISION**

11

12   DESHAWN SMITH,                    )      No. ED CV 10-633-PLA
                                       )
13                  Plaintiff,         )
                                       )
14          v.                         )      **MEMORANDUM OPINION AND ORDER**
                                       )
15   MICHAEL J. ASTRUE,                )
     COMMISSIONER OF SOCIAL            )
16   SECURITY ADMINISTRATION,          )
                                       )
17                  Defendant.         )
     _____ )
18

19                                     **I.**

20                             **PROCEEDINGS**

21         Plaintiff filed this action on May 10, 2010, seeking review of the Commissioner's denial of

22   her application for Supplemental Security Income payments.   The parties filed Consents to

23   proceed before the undersigned Magistrate Judge on May 20, 2010, and May 21, 2010.  Pursuant

24   to the Court's Order, the parties filed a Joint Stipulation on March 9, 2011, that addresses their

25   positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation

26   under submission without oral argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on April 24, 1970.  [Administrative Record ("AR") at 73, 93.]  She has a tenth grade education [AR at 10, 12-13, 84], and past relevant work experience as a caretaker, phone operator, babysitter, warehouse laborer, telemarketer, and cleaner.  [AR at 78-80, 357-64.]

On November 23, 2005, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since September 1, 2002, due to depression, back problems, and joint problems.  [AR at 31-32, 77-106, 124-26, 342-48.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 45-57.]  A hearing was held on August 31, 2007, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 5-30.]  A vocational expert ("VE") also testified.  [AR at  28-29.]  The ALJ determined that plaintiff was not disabled.  [AR at 36-43.]  On July 25, 2008, the Appeals Council denied plaintiff's request for review.  [AR at  1-3.]  On August 29, 2008, plaintiff filed a complaint in this Court in Case No. ED CV 08-1131-PLA.  [See AR at 297.]  On June 10, 2009, the Court entered judgment for plaintiff and remanded the case back to the ALJ for further proceedings.  [AR at 275, 297-311.]  On remand, the ALJ held another hearing on December 2, 2009, at which time plaintiff appeared with counsel and again testified on her own behalf.  A medical expert and a VE also testified.  [AR at 568-610.]  On February 10, 2010, the ALJ issued an opinion again finding plaintiff not disabled.  [AR at 275-86.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

1    In this context, the term "substantial evidence" means "more than a mere scintilla but less

2  than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

3  adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

4  1257.  When determining whether substantial evidence exists to support the Commissioner's

5  decision, the Court examines the administrative record as a whole, considering adverse as well

6  as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

7  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

8  must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala,

9  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

10

11    **IV.**

12    **THE EVALUATION OF DISABILITY**

13    Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

14  to engage in any substantial gainful activity owing to a physical or mental impairment that is

15  expected to result in death or which has lasted or is expected to last for a continuous period of at

16  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

17

18  **A.    THE FIVE-STEP EVALUATION PROCESS**

19    The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

20  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

21  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

22  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

23  claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in

24  substantial gainful activity, the second step requires the Commissioner to determine whether the

25  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

26  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

27  If the claimant has a "severe" impairment or combination of impairments, the third step requires

28  the Commissioner to determine whether the impairment or combination of impairments meets or

1    equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

2    Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

3    If the claimant's impairment or combination of impairments does not meet or equal an impairment

4    in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

5    sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

6    and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

7    perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

8    prima facie case of disability is established.  The Commissioner then bears the burden of

9    establishing that the claimant is not disabled, because she can perform other substantial gainful

10   work available in the national economy.  The determination of this issue comprises the fifth and

11   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

12   n.5; Drouin, 966 F.2d at 1257.

13

14   **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15        In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

16   gainful activity since November 23, 2005, the date of the application.  [AR at 277.]  At step two,

17   the ALJ concluded that plaintiff has the severe impairments of depressive disorder, a history of

18   cocaine and alcohol use, and lumbar back pain.  [Id.]  At step three, the ALJ determined that

19   plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [AR at 278.]

20   The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform

21   "light work as defined in 20 C.F.R. § 416.967(b)."[2]  Specifically, the ALJ found that plaintiff could

22   "lift and/or carry 10 pounds frequently and 20 pounds occasionally; she could be on her feet and/or

23   walk for 20 minutes at a time, but she could only walk for two hours out of an eight-hour work day;

24   _____

25   [1]    RFC is what a claimant can still do despite existing exertional and nonexertional
      limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26   [2]    20 C.F.R. § 416.967(b) defines "light work" as work involving "lifting no more than 20
27   pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and
      requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and
28   pulling of arm or leg controls."

4

she could sit for 1 hour at a time in an eight-hour work day, but she should be allowed to stand and stretch every 1 hour; [plaintiff] would miss work once or twice a month; she could occasionally stoop[,] bend, crouch, and kneel; she is limited to short, repetitive tasks involving object oriented work." [AR at 279.]  At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work.  [AR at 284-85.]  At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  [AR at 285-86.]  Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 286.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the treating physician's opinion; (2) failed to include in the RFC determination and in the hypothetical question posed to the vocational expert the non-examining physician's opinion that plaintiff has mild to moderate difficulties in concentration, persistence, or pace; and (3) failed to properly consider the lay witness testimony of plaintiff's friend.  [Joint Stipulation ("JS") at 2-3.]  As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.   TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ failed to properly consider the January 13, 2009, opinion of plaintiff's treating physician, Dr. Ochuko Diamreyan.  [JS at 3-22.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue,

1    495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite

2    the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound

3    to accept the opinion of a treating physician.  Where a treating physician's opinion does not

4    contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount

5    it.  Where a treating physician's opinion conflicts with other medical evidence, an ALJ may afford

6    it less weight only if the ALJ provides specific and legitimate reasons for discounting the opinion.

7    See Lester, 81 F.3d at 830; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an

8    opinion of an examining physician that constitutes substantial evidence, the treating physician's

9    opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling[3] 96-2p (a finding

10    that a treating physician's opinion is not entitled to controlling weight does not mean that the

11    opinion is rejected).  Similar rules apply to an ALJ's evaluation of an examining physician's

12    opinion.  Lester, 81 F.3d at 830-31.

13        Dr. Diamreyan treated plaintiff for well over three years.  [AR at 469.]  On May 12, 2005,

14    Dr. Diamreyan performed an initial evaluation of plaintiff.  [AR at 267-70.]  Dr. Diamreyan noted

15    that plaintiff's mood was depressed, perception was paranoid, and thought process was uneven.

16    [AR at 268-69.]  Dr. Diamreyan diagnosed plaintiff with major depressive disorder, recurrent,

17    severe with psychosis.  [AR at 269.]  He assessed plaintiff with a Global Assessment of

18    Functioning ("GAF") score of 40.[4]  [Id.]  Dr. Diamreyan prescribed psychotropic medications to

19    plaintiff and indicated that plaintiff's prognosis was "guarded."  [AR at 270.]  Dr. Diamreyan's

20    treatment records from June 17, 2005, through April 19, 2007, indicate that plaintiff heard voices,

21

22      [3]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

23    "constitute Social Security Administration interpretations of the statute it administers and of its
own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

24    the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

25      [4]   A Global Assessment of Functioning score is the clinician's judgment of the individual's
overall level of functioning.  It is rated with respect only to psychological, social, and occupational

26    functioning, without regard to impairments in functioning due to physical or environmental
limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental

27    Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF score in the range of 31 to 40 indicates some
impairment in reality testing or communication, or major impairment in several areas, such as work

28    or school, family relations, judgment, thinking, or mood.  DSM-IV at 34.

had paranoid thoughts, was depressed, and was generally compliant with medication.  [AR at 257-66.]  On June 26, 2007, and July 24, 2007, Dr. Diamreyan performed mental status examinations of plaintiff, in which he noted the following psychiatric findings: anxiety, depression, delusion, and hallucination.  [AR at 255-56.]  He diagnosed plaintiff with major depressive disorder, recurrent, severe with psychotic features (296.34).[5]  [Id.]  On August 23, 2007, Dr. Diamreyan noted that "[plaintiff] is my client with a diagnosis of major depressive disorder with psychosis."  [AR at 271.]

In the June 10, 2009, Memorandum Opinion and Order in Case No. ED CV 08-1131-PLA, this Court concluded that the ALJ in the first administrative decision[6] had failed to properly consider Dr. Diamreyan's opinions regarding plaintiff's impairments.  [See AR at 297-311.] Specifically, the Court determined that the ALJ did not provide sufficiently specific reasons for rejecting Dr. Diamreyan's opinion, failed to give proper reasons for giving more weight to the consultative psychiatric evaluator's opinion than to Dr. Diamreyan's opinion, and reached an inaccurate conclusion when he asserted that Dr. Diamreyan's opinion lacked objective support. [See AR at 302-06, 309-10.]  The Court also found that, by rejecting Dr. Diamreyan's findings, the ALJ had erred by selectively considering the medical evidence, and that the ALJ had failed to discharge his duty to develop the record by contacting Dr. Diamreyan to determine the basis of his opinion.  [See AR at 306-09.]  For these reasons, the Court remanded the case for proper consideration of Dr. Diamreyan's findings discussed above.  [AR at 311.]

Dr. Diamreyan's treatment records were further developed between the time of the 2007 and 2009 hearings.  On January 13, 2009, Dr. Diamreyan completed a "Mental Disorder Questionnaire" regarding plaintiff, in which he stated that he had seen plaintiff between every two weeks to every month from May 2005 to December 2008.  [AR at 465-69.]   Thus, the

---

5    The current official diagnostic coding system in the United States is the International Classification of Diseases, Ninth Revision, Clinical Modification ("ICD-9-CM").  See DSM-IV at 1. Diagnoses and procedures in the United States are assigned numerical codes, which are listed in the ICD-9-CM.  See id.  Plaintiff was assessed by Dr. Diamreyan with DSM-IV diagnosis code "296.34," which is the diagnosis code for major depressive disorder, recurrent, severe with psychotic features.  [AR at 255-56.]  DSM-IV at 369-71, 376, 411-13.

6    As the first administrative decision by the ALJ in plaintiff's case is undated [see AR at 36-43], the Court will refer to it as the "first decision."

1    Questionnaire encompassed over one year of additional time during which Dr. Diamreyan treated

2    plaintiff than the treatment records presented prior to the August 31, 2007, hearing before the ALJ.

3    In the Questionnaire, Dr. Diamreyan stated that plaintiff has had depression since 2002, and

4    continues to have anxiety, paranoia, a depressed mood, and mood swings.  [AR at 465-68.]  Once

5    again, Dr. Diamreyan diagnosed plaintiff with major depressive disorder, recurrent, severe with

6    psychosis, alcohol abuse, and obesity, and assigned plaintiff a GAF score of 40.  [AR at 469.]

7        The ALJ again rejected Dr. Diamreyan's findings in the February 10, 2010, administrative

8    decision.   Specifically, the ALJ cited and rejected Dr. Diamreyan's January 13, 2009,

9    Questionnaire as including "only conclusions regarding functional limitations without any rationale

10   for those conclusions."  [AR at 282, citing AR at 465-69.]  The ALJ did not, however, address Dr.

11   Diamreyan's opinions expressed in his May 12, 2005, initial evaluation of plaintiff, his progress

12   notes dated June 17, 2005, through July 24, 2007, or his prescription note of August 23, 2007, as

13   ordered by this Court.  [AR at 306-07, citing AR at 255-71.]  In rejecting Dr. Diamreyan's findings

14   expressed in the January 13, 2009, Questionnaire, the ALJ contended that Dr. Diamreyan had

15   completed the questionnaire "as an accommodation to [plaintiff]"; that "there is no objective

16   evidence indicating [plaintiff] exhibit[ed] any psychotic symptoms since 2005"; and that the medical

17   expert's testimony supports the conclusion that "there is no objective evidence indicating [plaintiff]

18   exhibit[ed] any psychotic symptoms since 2005."  [AR at 282.]  For these reasons, the ALJ gave

19   "less weight" to Dr. Diamreyan's opinion.  [Id.]  As explained below, the Court concludes that the

20   ALJ has again failed to provide specific and legitimate reasons supported by substantial evidence

21   for rejecting Dr. Diamreyan's treating opinion.

22       First, the ALJ's bare assertion that  Dr. Diamreyan completed the Questionnaire "as an

23   accommodation to [plaintiff]" is an insufficient basis for rejecting his opinions, as the ALJ points

24   to no evidence of actual impropriety on the part of Dr. Diamreyan.  [AR at 282.]  See Lester, 81

25   F.3d at 832 (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426

26   (D. Or. 1993)) ("The Secretary may not assume that doctors routinely lie in order to help their

27   patients collect disability benefits."); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.

28   1996) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113

(1997)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion).  The record contains no evidence that Dr. Diamreyan embellished his assessment of plaintiff's limitations in order to assist her with her benefits claim.  See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).  Thus, the ALJ's rejection of Dr. Diamreyan's opinion on this ground was improper.

Second, the ALJ's conclusion that Dr. Diamreyan's January 13, 2009, Questionnaire is not supported by objective evidence is insufficient [AR at 282], as it does not reach the level of specificity required to reject the opinion of a treating physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote omitted).  An ALJ can meet the requisite specific and legitimate standard for rejecting a treating physician's opinion deemed inconsistent with or unsupported by the medical evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  Here, the ALJ's conclusory assertion that Dr. Diamreyan's opinion was not supported by objective evidence in the record [see AR at 282], without explaining how the record was inconsistent with Dr. Diamreyan's opinion and stating his interpretation thereof, does not provide the degree of specificity required to reject Dr. Diamreyan's opinion.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); see also, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D. Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's opinion as inconsistent with the medical treatment, where the ALJ did not specify how the treatment record was inconsistent with the physician's opinion and state his interpretation thereof).

Moreover, the ALJ's assertion that there is no objective evidence supporting Dr. Diamreyan's  conclusions regarding plaintiff's functional limitations is not wholly accurate. [AR at 282.]  It is improper to reject a treating physician's opinion where he provided at least some objective observations and testing in addition to subjective opinions.  See Embrey, 849 F.2d at 421; see also 20 C.F.R. §§ 404.1527, 416.927 (The proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record.); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (when the treating physician diagnosed the claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, the ALJ erred in finding that the claimant had not set forth sufficient evidence to substantiate the mental impairment).   Here, on May 12, 2005, Dr. Diamreyan performed an initial mental status examination and found that plaintiff had a depressed mood, paranoid perception, and an uneven thought process.  [AR at 268-69.]  Dr. Diamreyan diagnosed plaintiff with major depressive disorder, recurrent, severe with psychosis, assessed plaintiff with a GAF score of 40, and prescribed psychotropic medications. [AR at 269-70.]  Thereafter, Dr. Diamreyan treated plaintiff for an extended period, conducted examinations of plaintiff, and prescribed medications to plaintiff, as evidenced by the progress notes contained in the record.  [AR at 255-71.]  Indeed, during the course of plaintiff's treatment, Dr. Diamreyan performed further mental status examinations of plaintiff, in which he noted depression, anxiety, delusion, hallucination, paranoia, bad thoughts, and mood swings.  [AR at 255-56, 260-66.]  Based on his treatment of plaintiff, Dr. Diamreyan continued to diagnose plaintiff with major depressive disorder, recurrent, severe with psychotic features. [AR at 255-56, 263, 265-66, 271.]  Moreover, numerous medical examination records from the Inland Behavioral and Health Services Health Care Clinic, where plaintiff sought medical treatment from October 2007 to July 2009 [see AR at 388-418, 542-67], also note that plaintiff suffered from anxiety.  [AR at 394-96, 402, 404, 561-62.]  Thus, Dr. Diamreyan's opinion in the January 13, 2009, Questionnaire is supported by his own treatment records, as well as by the larger body of plaintiff's medical treatment records.  Given that there are objective medical findings that lend support to Dr. Diamreyan's opinion that plaintiff suffered from major depressive disorder,

1   recurrent, severe with psychosis, and had a GAF score of 40,[7] the ALJ's rejection of Dr.

2   Diamreyan's opinion as unsupported by objective evidence itself lacks substantiation.

3        In addition, it was improper for the ALJ to selectively rely on Dr. Diamreyan's January 13,

4   2009, Questionnaire to reject his opinion.  An ALJ must consider all of the relevant evidence in the

5   record and may not point to only those portions of the records that bolster his findings.  See

6   Reddick, 157 F.3d at 722-23 (It is impermissible for the ALJ to develop an evidentiary basis by "not

7   fully accounting for the context of materials or all parts of the testimony and reports."); see also

8   Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (While the ALJ is not obligated to "reconcile

9   explicitly every conflicting shred of medical testimony," he cannot simply selectively choose

10   evidence in the record that supports his conclusions.); Robinson v. Barnhart, 366 F.3d 1078, 1083

11   (10th Cir. 2004) (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)) ("The ALJ is not

12   entitled to pick and choose from a medical opinion, using only those parts that are favorable to a

13   finding of nondisability."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ

14   to ignore or misstate the competent evidence in the record in order to justify her conclusion); Day

15   v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion

16   "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d

17   784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that

18   suggests an opposite conclusion.") (citation omitted).  Here, the ALJ only discussed Dr.

19   Diamreyan's January 13, 2009, Questionnaire, without any mention of Dr. Diamreyan's May 12,

20   2005, initial evaluation of plaintiff, his progress notes dated June 17, 2005, through July 24, 2007,

21   or his prescription note of August 23, 2007, all of which lend support to Dr. Diamreyan's opinion.

22

23

---

24       [7]   While a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and

25   Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Diamreyan's assessment of a GAF score of 40 and its implications

26   may be rejected without sufficient reason.  See Sorenson v. Astrue, 2008 WL 1914746, at *18

27   (N.D. Iowa Apr. 28, 2008) (a GAF score is used by medical professionals "'to consider psychological, social, and occupational functioning on a hypothetical continuum of mental health-

28   illness'") (citations omitted); see also Blake v. Astrue, 2008 WL 2224847, at *6 (D. Kan. May 27, 2008) (a GAF score of fifty or less may suggest an inability to keep a job).

1  [AR at 255-71.] Thus, the ALJ erred by failing to consider Dr. Diamreyan's opinion as a whole and

2  not giving proper reasons to reject it.[8]

3          Finally, an ALJ may not properly reject a treating physician's opinion by merely referencing

4  the contrary findings of another physician.  Even when contradicted, a treating physician's opinion

5  is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported

6  by substantial evidence for rejecting it.  See Orn, 495 F.3d at 632-33; see also Rollins v.

7  Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating

8  physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and

9  legitimate reasons' supported by substantial evidence in the record.") (citation omitted);

10 Hostrawser v. Astrue, 364 Fed. Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value

11 pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording nontreating physicians' opinions

12 controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough

13 summary of the conflicting clinical evidence and his interpretations thereof with an explanation as

14 to why his interpretations of the evidence, rather than those of the treating physicians, were

15 correct); SSR 96-2p.  Specifically, the opinion of a non-examining physician may only serve as a

16 basis to reject the opinion of a treating physician where the non-examining physician's opinion is

17 consistent with other independent evidence in the record.  See Ryan v. Comm'r of Soc. Sec.

18 Admin., 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting Lester, 81 F.3d at 831 (emphasis in original))

19 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that

20 justifies the rejection of the opinion of either an examining physician or a treating physician.").  In

21 contrast, "[a] report of a non-examining, non-treating physician should be discounted and is not

22

23  ───────────────

24      [8]    On remand, this Court ordered the ALJ to "recontact Dr. Diamreyan to resolve any
    perceived inadequacies and fully develop the record."  [AR at 309.]  At the December 2, 2009,
    hearing before the ALJ, plaintiff's counsel stated to the ALJ that he would contact Dr. Diamreyan
25  to obtain the records necessary to comply with the Court's order.  [AR at 577-78.]  Plaintiff admits
    that "there is no record evidence that [plaintiff's] counsel did attempt to contact Dr. Diamreyan."
26  [JS at 20.]  As defendant points out [see JS at 28-29], there is no evidence that plaintiff's counsel
    informed the ALJ that he needed assistance or more time to obtain additional records.  Under
27  these circumstances, the Court finds that the ALJ, by relying on plaintiff's counsel, has complied
    with the Court's order.
28

1    substantial evidence when contradicted by all other evidence in the record." See Gallant v.

2    Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th

3    Cir. 1984)).  More weight is generally given to the opinions of treating physicians because they

4    "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

5    [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

6    evidence that cannot be obtained from the objective medical findings alone or from reports of

7    individual examinations, such as consultative examinations or brief hospitalizations."  See 20

8    C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

9         As discussed above, Dr. Diamreyan saw plaintiff between every two weeks and every

10   month for well over three years, performed mental status examinations of plaintiff, and prescribed

11   psychotropic medications to her.  See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii)

12   (weight accorded to a treating physician's opinion dependent on length of the treatment

13   relationship, frequency of visits, and nature and extent of treatment received).  Based on the

14   length of the treatment relationship and Dr. Diamreyan's experience with plaintiff, Dr. Diamreyan

15   had the broadest range of knowledge regarding plaintiff's mental condition, which is supported by

16   the treatment records. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Lester, 81 F.3d

17   at 833 ("The treating physician's continuing relationship with the claimant makes him especially

18   qualified to evaluate reports from examining doctors, to integrate the medical information they

19   provide, and to form an overall conclusion as to functional capacities and limitations, as well as

20   to prescribe or approve the overall course of treatment.").  In rejecting Dr. Diamreyan's opinion in

21   the January 13, 2009, Questionnaire, the ALJ concluded that "as supported by the medical

22   expert's testimony[,] which is discussed in more detail[] below, there is no objective evidence

23   indicating [plaintiff] exhibit[ed] any psychotic symptoms since 2005" [AR at 282], and also

24   concluded that the non-examining physician's testimony was "reasonable and consistent with the

25   medical evidence." [AR at 283.]  To support this conclusion, the ALJ summarized the testimony

26   of the non-examining physician, Dr. Michael Kania, but failed to point out any independent

27   evidence in the record comprising specific and legitimate reasons for rejecting Dr. Diamreyan's

28   opinion.  [See AR at 283.]  Thus, the ALJ's rejection of Dr. Diamreyan's opinion was improper.

1   Moreover, Dr. Kania's conclusion that the record contained no evidence that plaintiff experienced
2   psychotic symptoms from November 2005 until at least December 2008 [see AR at 581-90] is not
3   entirely accurate.  In reaching his conclusion, Dr. Kania stated that there was no evidence in the
4   record that plaintiff heard voices after 2005 [AR at 585, 589], but Dr. Diamreyan's progress notes
5   dated between November 2005 and July 2007 document several instances in which plaintiff
6   reported hearing voices  [see AR at 255-56, 265] or fewer voices [see AR at 259-60, 262].  In
7   addition, Dr. Diamreyan's progress notes dated June 26, 2007, and July 24, 2007, noted findings
8   of hallucination and delusion.  [AR at 255-56.]  Thus, Dr. Kania incorrectly stated that his testimony
9   was consistent with all of Dr. Diamreyan's treatment notes between November 2005 and January
10  13, 2009 [AR at 586], and the ALJ erred in assigning greater weight to Dr. Kania's opinion than
11  that of Dr. Diamreyan [see AR at 284].  The ALJ's summary of the non-examining physician's
12  findings does not justify his rejection of the treating physician's opinion.  Rather, the ALJ's rejection
13  of Dr. Diamreyan's opinion without expressly setting forth specific and legitimate reasons for doing
14  so was improper.

15         Since the ALJ again failed in the 2010 decision to provide sufficient reasons for rejecting
16  Dr. Diamreyan's opinions regarding plaintiff's mental impairments (even after this Court remanded
17  the ALJ's first decision for proper consideration of Dr. Diamreyan's findings), the Court now credits
18  Dr. Diamreyan's opinions as true.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004)
19  (citing Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) ("Because the ALJ failed to provide
20  legally sufficient reasons for rejecting ... [the] treating physicians' opinions, we credit the evidence
21  as true."); see also Smolen, 80 F.3d at 1285-88, 1292; Varney v. Sec'y of Heath and Human
22  Servs., 859 F.2d 1396,1398 (9th Cir. 1988)).  When a court reverses an ALJ's decision denying
23  social security benefits, "the proper course, except in rare circumstances, is to remand to the
24  agency for additional investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir.
25  2004) (quoting INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L.Ed.2d 272 (2002) (per
26  curiam)).  Here, the Court concludes that remand is necessary for the ALJ to assess plaintiff's
27  RFC and disability status, after crediting as true Dr. Diamreyan's assessments of plaintiff's mental
28  impairments.

1

2   **B.    RFC DETERMINATION AND VOCATIONAL EXPERT HYPOTHETICAL**

3        Next, plaintiff contends that the ALJ erred in reaching the RFC determination and posing

4   an incomplete hypothetical question to the vocational expert.  [JS at 34-35.]  Specifically, plaintiff

5   argues that the ALJ erred in excluding from the RFC and the hypothetical question posed to the

6   vocational expert Dr. Kania's findings that plaintiff had mild to moderate difficulties in

7   concentration, persistence, or pace.  [Id.]

8        As an initial matter, the Court notes that, as the ALJ based his questions to the vocational

9   expert on his consideration of the medical evidence, new vocational expert testimony will be

10  necessary now that the Court has ordered the ALJ to credit Dr. Diamreyan's findings as true.  The

11  Court will address plaintiff's argument, however, to provide guidance for this issue on remand.

12       In determining a claimant's disability status, an ALJ has the responsibility to determine the

13  claimant's RFC after considering "all of the relevant medical and other evidence" in the record.

14  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c).  "Thus, an RFC that fails

15  to take into account a claimant's limitations is defective."  Valentine v. Comm'r of Social Sec.

16  Admin., 574 F.3d 685, 690 (9th Cir. 2009).  Similarly, "[t]he hypothetical an ALJ poses to a

17  vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of

18  the particular claimant.'"  Id. (citing Embrey, 849 F.2d at 422 (emphasis in original)).  See also

19  Nguyen, 100 F.3d at 1466 n.3 ("Because the hypothetical was incomplete, it does not constitute

20  competent evidence to support a finding that claimant could do jobs set forth by the vocational

21  expert.").

22       On February 8, 2006, non-examining State Agency psychiatrist Nasra S. Haroun completed

23  a "Psychiatric Review Technique" form ("PRTF") for plaintiff, in which she noted that plaintiff had

24  mild difficulties in maintaining concentration, persistence, or pace.  [AR at 134-47.]  At the

25  December 2, 2009, hearing before the ALJ, Dr. Kania testified that plaintiff's "difficulties in

26  maintaining concentration, persistence or pace would be mild to moderate," and that plaintiff

27  "would be capable of simple, repetitive tasks."  [AR at 582.]  In posing a hypothetical to the

28  vocational expert concerning plaintiff's work capacity, the ALJ included Dr. Kania's finding that

plaintiff would be capable of simple, repetitive tasks, but did not include Dr. Kania's finding that plaintiff would have "mild to moderate ... difficulties in maintaining concentration, persistence, or pace." [See AR at 608.]  Similarly, in the 2010 RFC determination, the ALJ found that plaintiff "is limited to short, repetitive tasks," but did not include any limitations in maintaining concentration, persistence, or pace.  [See AR at 279.]

The phrase "simple, repetitive work" does not encompass difficulties with concentration, persistence, or pace where there is evidence of such difficulties.  See Brink v. Comm'r of Social Sec. Admin., 343 Fed. Appx. 211, 212 (9th Cir. 2009) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (where medical evidence established difficulties with concentration, persistence, or pace, "the ALJ's initial hypothetical question to the vocational expert referenc[ing] only 'simple, repetitive work,' without including limitations on concentration, persistence or pace" was error).  Where an ALJ accepts medical evidence of a plaintiff's limitations in maintaining concentration, persistence, or pace, the hypothetical question posed to the vocational expert must include those limitations.  See Betancourt v. Astrue, 2010 WL 4916604, at *3-4 (C.D. Cal. Nov. 27, 2010) (where the ALJ accepted medical evidence of plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the VE including plaintiff's restriction to "simple, repetitive work" but excluding plaintiff's difficulties with concentration, persistence, or pace resulted in a VE's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."); see also Abrego v. Comm'r of Social Sec. Admin., 2000 WL 682671, at *3  (D. Or. May 25, 2000) (remand was appropriate where "the hypothetical the ALJ posed to the VE failed to fully or accurately state plaintiff's deficiencies in concentration, persistence, or pace, as stated by the ALJ on the PRTF attached to his decision."); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (where plaintiff's frequent deficiencies in concentration, persistence, or pace "were not included in the hypothetical question, the [vocational] expert did not base his opinion on the full extent of [plaintiff's] limitations and his testimony could not have constituted substantial evidence to support the Commissioner's decision.").  Similarly, an ALJ's RFC assessment must include limitations in maintaining concentration, persistence, or pace.  See Melton v. Astrue, 2010 WL 3853195, at *8 (D. Or. Sept.

28, 2010), aff'd., 2011 WL 2727869 (9th Cir. July 14, 2011) (ALJ erred in her assessment of plaintiff's RFC where the assessment included plaintiff's restriction to simple, repetitive tasks, but did not include plaintiff's mild-to-moderate limitations in maintaining concentration, persistence, or pace); see also Berjettej v. Astrue, 2010 WL 3056799, at *8 (D. Or. July 30, 2010) (ALJ erred when he failed to include the reviewing psychologist's opinion concerning plaintiff's moderate difficulties in maintaining concentration, persistence, or pace in plaintiff's RFC). Here, both the State Agency psychiatrist's February 8, 2006, PRTF and Dr. Kania's testimony indicated that plaintiff has at least mild difficulties in maintaining concentration, persistence, or pace, but the ALJ did not include these difficulties in either the RFC assessment or the hypothetical question posed to the vocational expert. The ALJ's failure to do so was error. On remand, all of plaintiff's limitations and restrictions should be set out in the RFC assessment and included in any hypothetical posed to the VE.

## C.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ improperly rejected lay witness testimony. [JS at 36-43.] Specifically, plaintiff argues that the ALJ failed to provide germane reasons for rejecting a third party function report submitted by Marcus Criner. [Id.; AR at 349-56.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect her ability to work. Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague, 812 F.2d at 1231-32. Moreover, "the testimony of those who see the claimant less often [than daily] still carries some weight." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Id.; Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

1    In the third party function report, Mr. Criner stated that he has known plaintiff for three and

2   a half years and spends eight hours a week with her.  [AR at 349.]  During those eight hours, Mr.

3   Criner supports and participates in church activities with plaintiff.  [AR at 349-50.]  Mr. Criner

4   reported that plaintiff is able to clean the house, pay bills, help her daughter with her homework,

5   and take her daughter to school and church.  [AR at 349-50, 352.]  He also reported that plaintiff

6   has arrived at church or Bible study with her blouse unevenly buttoned, her socks not matching,

7   her hair half-combed, and "soap still on her."  [AR at 350.]  Mr. Criner stated that plaintiff no longer

8   prepares home meals, that the kitchen "seems to be an unsafe work area" for her, and that plaintiff

9   needs reminders to ensure that the stove is off.  [AR at 350-51.]  He also noted that plaintiff no

10   longer goes to the movies or takes walks in the park, and only goes out with others from church

11   "after she [is] coached."  [AR at 354.]  He reported that plaintiff calls on other church members

12   several times a week to assist her with shopping.  [AR at 352.]  Mr. Criner  also stated that plaintiff

13   needs reminders to take her medication, and has difficulty paying attention, concentrating, and

14   understanding instructions.  [AR at 351, 354, 356.]  He noted that plaintiff "can't find comfort, [her]

15   nerves appear to be at risk," and that her medication "does not [always] work."  [AR at 350.]  He

16   also reported that plaintiff does not handle stress well, and that "she has flared as thou [sic]

17   paranoia came upon her when over[]whelmed."  [AR at 355.]  He stated that sitting for long periods

18   hurts plaintiff's back, that climbing stairs hurts her back and knees, that plaintiff does not walk far

19   due to swelling and pain, that she cannot kneel due to her knees, and that other church members

20   will not allow her lift things or bend over due to the pain in her back and knees.  [AR at 354.]  Mr.

21   Criner also reported that plaintiff uses a cane and knee braces.  [AR at 355.]

22    The ALJ found Mr. Criner "only credible to the extent that [plaintiff] can do the work

23   described [in the ALJ's decision]," and rejected Mr. Criner's statements concerning the severity

24   of plaintiff's symptoms as "not credible."  [AR at 281.]  The ALJ rejected Mr. Criner's statements

25   on the grounds that Mr. Criner is "a lay witness," and therefore "not competent to make a

26   diagnosis or argue the severity of [plaintiff's] symptoms in relationship to her ability to work."  [Id.]

27   The ALJ also rejected Mr. Criner's statements because they "were not given under oath," because

28   "[a]s [plaintiff's] friend, he has a motivation to be helpful to [plaintiff] so she can receive benefits,"

1  and because "his allegations in regards to the severity of [plaintiff's] symptoms are out of

2  proportion to the medical evidence and are rebutted by the assessments of the medical expert,

3  the consultative examiner, and the State agency physicians." [Id.]

4       The ALJ's reasons for rejecting Mr. Criner's report are not germane reasons specific to him.

5  First, the ALJ mischaracterized Mr. Criner's statements in concluding that he is not competent to

6  diagnose plaintiff's impairments or discuss their severity because he is not a medical professional.

7  [AR at 281.]  In the report, Mr. Criner referenced plaintiff's "arthritis," observed that plaintiff "has

8  flared as thou [sic] paranoia came upon her when over[]whelmed," and reported that plaintiff "can't

9  find comfort" and her "nerves appear to be at risk." [AR at 350, 352, 355.]  While these particular

10 statements are couched in medical terms, the vast majority of the report contains Mr. Criner's

11 observations of plaintiff's activities and functional limitations on a weekly basis over a period of

12 three and a half years [AR at 349-56], many of which the ALJ credited as true in the 2010

13 decision.  [See AR at 281.]  Second, the fact that Mr. Criner is not a medical professional is not

14 a germane reason for rejecting his testimony.  Lay witnesses, by definition, are not medical

15 professionals, and the ALJ's reasoning would lead to a wholesale dismissal of all lay witnesses.

16 "Disregard of this evidence violates the Secretary's regulation that he will consider observations

17 by non-medical sources as to how an impairment affects a claimant's ability to work." Dodrill, 12

18 F.3d at 919 (quoting Sprague, 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2))).

19      Second, the ALJ's rejection of Mr. Criner's testimony on the basis that his statements were

20 not given under oath is not a reason germane to Mr. Criner.  Mr. Criner submitted his observations

21 regarding plaintiff's activities and abilities on a "Function Report -- Adult -- Third Party," which is

22 the Social Security Administration's own "Form SSA-3380-BK." [See AR at 349-56.]  There is no

23 indication on the form that the person completing the form must make the statements under oath

24 in order for the statements to constitute "acceptable medical evidence" under 20 C.F.R. §§

25 404.1513(d), 416.913(d), nor do the regulations themselves require that such forms be completed

26 under oath.  See 20 C.F.R. §§ 404.1513(d), 416.913(d) ("In addition to evidence from the

27 acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from

28 other sources to show the severity of your impairment(s) and how it affects your ability to work.").

As with the previous reason, the ALJ's rejection for lack of an oath would amount to a wholesale dismissal of the statements in all such reports, and is therefore an improper reason to reject Mr. Criner's statements.

Likewise, the ALJ's rejection of Mr. Criner's statements on the basis that he is plaintiff's friend, and therefore has a motive to help plaintiff receive benefits, was improper because such a basis for rejection would also result in the dismissal of testimony of any witness who is the friend of a claimant, which would undermine the assumption that lay testimony from witnesses who see a claimant regularly, albeit less frequently than every day, "still carries some weight." Dodrill, 12 F.3d at 919. The ALJ's conclusory rejection of Mr. Criner's testimony, without pointing to a specific basis for finding that Mr. Criner was improperly biased, does not qualify as a reason germane to Mr. Criner. See Smolen, 80 F.3d at 1289 (ALJ's rejection of plaintiff's family members' testimony on the grounds that they were "'understandably advocates, and biased' . . . amounted to a wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified"); see also Regennitter, 166 F.3d at 1298 (ALJ cannot reject lay witness testimony of plaintiff's mother on the basis of presumed bias).

Finally, the ALJ improperly rejected Mr. Criner's testimony on the basis that "his allegations in regards to the severity of [plaintiff's] symptoms are out of proportion to the medical evidence and are rebutted by the assessments of the medical expert, the consultative examiner, and the State agency physicians." While inconsistency with the medical evidence may be a reason to reject lay witness testimony, the Court finds the ALJ's rationale unpersuasive in this case for several reasons. First, as discussed above, both the ALJ's review of the medical evidence and Dr. Kania's assessment of plaintiff's impairments were improper as to plaintiff's symptoms of psychosis. Thus, insofar as the ALJ's rejection of Mr. Criner's statements was premised on his improper review of the evidentiary record or Dr. Kania's inaccurate opinion, the ALJ must also reconsider Mr. Criner's statements on remand. Moreover, in determining plaintiff's RFC, the ALJ noted that although he agreed with the assessments of the consultative examiner and the State agency physicians, his own ultimate RFC was more restrictive than those of the consultative examiner and State agency physicians because the ALJ "took into consideration" plaintiff's

subjective complaints. [AR at 283.] As such, without a more specific explanation, it is unclear to the Court how any inconsistency between the consultative examiner and State agency physicians' assessments and Mr. Criner's statements is a proper basis for rejecting Mr. Criner's statements. Finally, insofar as the ALJ found Mr. Criner credible in his observations of plaintiff's activities, but otherwise not credible, the ALJ improperly discredited some of Mr. Criner's statements on the basis of their "relevance or irrelevance to medical conclusions." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (ALJ improperly discredited plaintiff's wife's lay witness testimony "on the basis of its relevance or irrelevance to medical conclusions" where ALJ found her credible in her observations of her husband's activities, but not credible "'to render opinions on how the [plaintiff's] impairments impact his overall abilities to perform basic work activities'"). The ALJ's grounds for rejecting Mr. Criner's statements, without articulating *how* Mr. Criner's statements are inconsistent with the medical evidence or valid assessments by Dr. Kania, the consultative examiner, or the State agency physicians, is not sufficiently specific to constitute a germane reason for rejecting Mr. Criner's statements. See Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054) ("If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness' . . . [and the reasons] must be specific."); see also Vista Hill Found., Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (A reviewing court may affirm an administrative decision only on grounds articulated by the agency.).

The ALJ's failure to properly reject Mr. Criner's statements -- who spent time with plaintiff on a weekly basis and has known plaintiff for three and a half years -- was error. See Dodrill, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). Moreover, the ALJ's failure in this instance does not constitute harmless error because Mr. Criner's statements may have corroborated plaintiff's testimony or provided additional information that could have impacted the ALJ's determination regarding the severity of plaintiff's impairments and how those impairments affect plaintiff's ability to work. See Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether

1  there is a reasonable possibility that [the new evidence] would have changed the outcome of the

2  present case"); see also  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting

3  Stout, 454 F.3d at 1055-56) (harmless error applies only when it is clear from the record that an

4  ALJ's error is "inconsequential to the ultimate nondisability determination").  Indeed, the report

5  completed by Mr. Criner lends some support to plaintiff's testimony regarding her inability to work.

6  [AR at 349-56.]  In the report, Mr. Criner stated that plaintiff's conditions affect her in various ways

7  physically, emotionally, and socially.  [See supra, at 18.]  The Court cannot confidently conclude

8  that no reasonable ALJ, if crediting the lay witness statements of plaintiff's friend, would have

9  reached a different disability determination.  See Robbins, 466 F.3d at 885 (quoting Stout, 454

10  F.3d at 1056) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony

11  favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can

12  confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

13  reached a different disability determination.").  As the ALJ failed to provide germane reasons for

14  rejecting Mr. Criner's statements, and as the error was not harmless, remand is warranted on this

15  issue.

16  /

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27  /

28  /

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to consider plaintiff's RFC and disability status after crediting Dr. Diamreyan's findings and properly considering Mr. Criner's statements, and to include all of plaintiff's limitations in the RFC assessment and the hypothetical question posed to the VE.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 8, 2011

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

23